In re AMERICAN FREIGHT SYSTEM, INC., Debtor.

In re ANUHCO, INC. (f/k/a American Carriers, Inc.), Debtor.

AMERICAN FREIGHT SYSTEM, INC., Plaintiff,

v.

Norman R. POWELL, Defendant.

Norman R. POWELL, Plaintiff,

v.

ANUHCO, INC., et al., Defendant.

No. 95–4069–SAC.
Bankruptcy Nos. 88–41050–11, 88–41265–11.
Adv. Nos. 93–7179, 94–7023.

United States District Court, D. Kansas.

Dec. 17, 1996.

P. John Brady, Gregory Bentz, James C. Sullivan, Shughart, Thomson & Kilroy, P.C., and James R. Hess, Hillix, Brewer, Hoffhaus, Whittaker & Wright, L.L.C., Kansas City, MO, for American Freight System, Inc. and Anuhco, Inc.

Bert S. Braud, Dennis E. Egan, the Popham Law Firm, R. Pete Smith and Jonathan A. Margolies, McDowell, Rice, Smith & Gaar, Kansas City, MO, for Norman R. Powell.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

In this bankruptcy case, Norman R. Powell appeals the adverse rulings of the bankruptcy court. Those rulings essentially preclude Powell from asserting a multi-million dollar claim against his former employer, American Freight System (AFS). A factual background is necessary to understand the issues presented by this appeal, an appeal which explores the labyrinth created by the interrelationship of the bankruptcy code to AFS's reorganization plan.[1]

### Overview

American Freight System was a motor common carrier subject to the jurisdiction of the Interstate Commerce Commission (ICC). On August 16, 1988, American Freight System filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The disputes arising from AFS's bankruptcy are legion and in large part revolve around AFS's attempts to recover undercharges from shippers who utilized its transport services. *See, e.g., In re American Freight System, Inc.,* 162 B.R. 5 (D.Kan.1993). AFS's fifth amended reorganization plan was confirmed on June 10, 1991.

### The Dispute

Norman R. Powell is an attorney. Powell, who apparently began working for AFS after it filed for bankruptcy, acted as AFS's Senior Executive Vice President and General Counsel. Powell was later named as Chief Executive Officer of AFS and as president. Powell remained in those positions until 1991. In February 1991, Powell was removed as CEO, but continued as AFS's president.

Powell was apparently interested in remaining with AFS in some capacity after confirmation of the reorganization plan. Pri-

---

1. The court notes that this case has been under advisement for several months. This was due in part to the complexity of the issues presented, the size of the appellate record, and the press of several criminal cases, including a six week criminal trial during the summer of 1996.

Despite the complexity of the issues presented, the court concludes that oral argument would not materially assist in the disposition of the pending appeal.

or to confirmation of the plan,[2] Powell apparently discussed with AFS representatives his possible role with AFS after confirmation. According to Powell, no pre-confirmation agreement was reached. However, Powell contends that after the plan was confirmed and after its effective date, he entered into an agreement with AFS to manage and direct the collection of freight bill receivables, acting as counsel in the trial of cases before the ICC, and serving as principal witness and co-counsel before the bankruptcy court.

According to Powell, an incentive provision was to be part of his compensation[3] for his continued employment with AFS. The alleged incentive provision consisted of "(1) 10% of freight receivables collections from $10,008,000; (2) 20% of freight receivables collections in excess of $11,200,000." In light of the amount of freight receivables outstanding, if enforceable, Powell stood to profit substantially from this provision. At no point were any of the terms of Powell's compensation package presented to the bankruptcy court for approval.

According to Powell, he diligently worked for several years under the assumption that the incentive provision of his employment agreement was valid and enforceable against AFS. Based upon his understanding of the terms of the reorganized plan, the order confirming the plan and the bankruptcy code, Powell did not believe that it was necessary for the bankruptcy court to approve his post-confirmation compensation package.

In August of 1993, during a deposition of Powell in an undercharge case, Powell stated that he had an incentive contract with AFS. AFS denied the existence of such a contract. Tim O'Neil, president and CEO of AFS, asked Powell to repudiate his testimony regarding the alleged incentive agreement. When Powell refused, his employment with AFS was terminated.

On November 13, 1993, AFS filed an adversary action in bankruptcy court seeking a declaration that Powell did not have an incentive contract as he alleged. Approximately two months later, Powell instituted a suit in Kansas state court against AFS, Anuhco, Inc., Timothy P. O'Neil and John P. Bigger. Powell's petition asserted claims sounding in contract and tort. The defendants subsequently removed that action to bankruptcy court. Both adversary proceedings presented essentially the same factual issue: Did Powell have an enforceable incentive compensation agreement with AFS?

### The Bankruptcy Court's Rulings

On January 3, 1995, the bankruptcy court entered a memorandum and order ruling on Powell's motion to dismiss in adversary proceeding No. 93–7179 and on Powell's motion to remand in adversary proceeding No. 94–7023. After summarizing the history of the dispute, the court denied Powell's motion to dismiss and denied Powell's motion to remand insofar as it sought remand of his claims against AFS. Powell's motion to remand was granted to allow Powell to pursue any claim which he might have against the parties other than AFS.

Summarized, these are the findings of the bankruptcy court justifying its rulings:

1) The bankruptcy court has jurisdiction to consider Powell's claims against AFS;

2) Powell's alleged incentive agreement cannot be enforced against AFS's bankruptcy estate because, to the extent that Powell's agreement with AFS was contemplated before the date the plan was confirmed, it was required to be disclosed pursuant to 11 U.S.C. §§ 1129(a)(5) and 1129(a)(4);

3) If Powell's alleged agreement would have been disclosed, the court would not have approved the agreement because "the incentive saddled him with a serious conflict of interest;"

4) Without prior court approval, pursuant to 11 U.S.C. § 327, Powell could not act as a professional for AFS in connection with the collection of its prepetition assets, even if Powell was hired after confirmation of the plan and its effective date.

---

**2.** On June 10, 1991, the bankruptcy court confirmed the fifth amended joint plan. The plan became effective thirty days later.

**3.** Both before and after the plan, Powell was compensated in excess of $150,000 per annum.

On April 2, 1995, the bankruptcy court entered an **"ORDER DENYING MOTION FOR RECONSIDERATION AND FOR EVIDENTIARY HEARING."** In pertinent part, the bankruptcy court's order states:

In these reorganization cases, the parties filed a joint liquidating plan which contemplated that the pre-petition assets of all Debtors would be sold to pay pre-petition creditors. Under this Plan, AFS assumed liability for all pre-petition claims against all Debtors and was granted the power to liquidate all pre-petition assets. As the liquidating reorganized Debtor, AFS was thus given the authority of a Debtor-in-Possession post-confirmation. As a Debtor-in-Possession, AFS was obligated to conduct itself in accordance with the statutory requirements of the Bankruptcy Code. Pursuant to Section 327 of the Code, the Debtor-in-Possession must obtain court approval to retain professionals.

In these proceedings, Powell claims that he was retained post-confirmation as an expert and as an attorney for AFS to collect freight undercharges. As such, Powell claims to be a professional, and thus, his retention was governed by section 327. This Court has ruled, and here reaffirms that ruling, that since this Court did not approve Powell's employment, as required by Section 327, Powell does not have an enforceable employment agreement with AFS.

Powell has also asked for an evidentiary hearing to prove up various facts supporting his claim of post-confirmation employment. The Court has assumed, for purposes of this Order only, that Powell would be able to produce evidence in support of those factual representations. Those facts do not alter the Court's conclusion that Powell's alleged employment agreement is unenforceable because it was not approved by this Court.

In the various pleadings filed by Powell in these two proceedings, Powell has suggested, from time to time, that he may have been retained pre-confirmation although, in the last analysis, Powell has chosen to go forward on the theory that he was retained post-confirmation. Under either analysis, this Court has authority to rule the appropriateness of the employment. In either instance, had the alleged agreement been presented to the Court as it should have been, the Court would not have approved Powell's employment with the alleged incentive arrangement since such an arrangement would create conflict of interest between Powell and the Debtor as to the estate's collection efforts.

**ORDER DENYING MOTION FOR RECONSIDERATION AND FOR EVIDENTIARY HEARING** (Bankruptcy Dk. 52) at 2–3.

On April 26, 1995, the bankruptcy court entered an "Order Clarifying Rulings."

Powell appeals the unfavorable decisions of the bankruptcy court, arguing (1) that the bankruptcy court does not have jurisdiction over his post-confirmation state law claims; that even if the bankruptcy court had jurisdiction to consider his claims, (2) that the bankruptcy court erred in repudiating the compensation agreement between the parties on the basis that such an agreement should have been disclosed under 11 U.S.C. § 1129(a)(5); (3) that the bankruptcy court erred in holding that his incentive compensation agreement with AFS was unenforceable because it did not have court approval as required by either 11 U.S.C. § 1129(a)(4) or 11 U.S.C. § 327; (4) that the bankruptcy court erred in denying him his right to a jury trial; (5) that the bankruptcy court erred in denying him his damages for wrongful removal.

### Standard of Review

The legal determinations by the bankruptcy court are reviewed de novo, while its factual findings are reviewed under the clearly erroneous standard. *In re Osborn*, 24 F.3d 1199, 1203 (10th Cir.1994). The bankruptcy court's interpretation of its own order is entitled to substantial deference. *In re Bono Development, Inc.*, 8 F.3d 720, 721–22 (10th Cir.1993).

### Jurisdiction of the Bankruptcy Court

In regard to Powell's subject matter jurisdiction challenge, the bankruptcy court stated:

As this discussion should already have made clear, the Court is convinced that it has jurisdiction to determine whether Mr. Powell can enforce his alleged agreement against the assets that are in AFS's bankruptcy estate. If the agreement was sufficiently definite before confirmation, it had to be disclosed pursuant to § 1129(a)(5). Even if such disclosure was not required, the agreement is based on the collection of prepetition assets, and is so closely linked and related to those assets that it must be deemed to come within the Court's post-confirmation jurisdiction of disputes about those assets.

January 3, 1995, Memorandum of Decision on Motions to Dismiss and to Remand at 12–13.

On appeal, Powell contends that it is patently clear under the bankruptcy code and the case law interpreting the code that the bankruptcy court does not have subject matter jurisdiction to consider his post-confirmation breach of contract and tort claims against AFS.

### Subject Matter Jurisdiction

■ "Subject matter jurisdiction cannot be waived and may be challenged by a party or raised *sua sponte* by the court at any point in the proceedings." *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir.1994).

■ "Bankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress." *In re Gardner*, 913 F.2d 1515, 1517 (10th Cir. 1990). "The bankruptcy jurisdiction of the district courts (including therefore that of the bankruptcy courts, which exercise powers delegated to them by the district courts, 28 U.S.C. § 157(a), (b)) extends to 'all civil proceedings arising under title 11 [of the U.S. Code], or arising in or related to cases under title 11.'" *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir.1994).

Bankruptcy courts have jurisdiction over core proceedings. *See* 28 U.S.C. § 157. Core proceedings are proceedings which have no existence outside of bankruptcy. *In re Alexander*, 49 B.R. 733, 736 (Bankr. D.N.D.1985). Actions which do not depend on the bankruptcy laws for their own existence and which could proceed in another court are not core proceedings. *In re Wood*, 825 F.2d 90, 96 (5th Cir.1987).

Bankruptcy courts also have jurisdiction over related proceedings, under the authority of 28 U.S.C. § 1471(b), which confers jurisdiction on district courts for cases related to title 11 proceedings. *In re Fietz*, 852 F.2d 455, 456 (9th Cir.1988); *see also* 28 U.S.C. § 157. Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court. *In re Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir.1984). "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted). Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate. *Id.; see also In re Wood*, 825 F.2d at 93 (related matters conceivably have effect on administration of bankruptcy estate); *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir.1987) (same); *In re Bobroff*, 766 F.2d 797, 802 (3d Cir.1985) (same).

A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case. *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, *In re Hall's Motor Transit Co.*, 889 F.2d 520, 523 (3d Cir.1989); *In re Xonics, Inc.*, 813 F.2d at 131; *In re Muller*, 72 B.R. 280, 284 (C.D.Ill.1897), *aff'd* 851 F.2d 916 (7th Cir. 1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989), and the property's relationship to the bankruptcy proceeding comes to an end. *See In re Hall's Motor Transit Co.*, 889 F.2d at 523. Thus, the bankruptcy court lacks related

jurisdiction to resolve controversies between third party creditors which do not involve the debtor of his property unless the court cannot complete administrative duties resolving the controversy. *In re Shirley Duke Assocs.*, 611 F.2d 15, 18 (2d Cir.1979).

*In re Gardner*, 913 F.2d at 1517–18.

### Post–Confirmation Jurisdiction

■ "[C]onfirmation of a reorganization plan causes the bankruptcy court's jurisdiction to contract, and revests the property of the estate in the reorganized debtor." *In re Lacy*, 183 B.R. 890, 894 (D.Colo.1995) (citations omitted).

A confirmed plan is a document that is legally binding upon all parties, including creditors, equity interest holders, debtors, and others within the court's jurisdiction whether or not they consented to the plan. After confirmation, all such parties are precluded from raising issues they could have raised before confirmation. Unless the plan or confirmation order provides otherwise, property that was property of the estate vests in the reorganized debtor. If the debt underlying any lien is discharged or cancelled, the lien is cancelled. The automatic stay ceases, the plan's obligations and liens replace the extinguished pre-confirmation debts and liens, and with narrow exceptions, confirmation discharges a debtor from all pre-confirmation debts and destroys the liens that secure them.

The court continues to have jurisdiction over core matters such as claims resolution, and within statutory limits, the terms of the confirmed plan may affect the extent of this continuing jurisdiction. The debtor may bring limited types of adversary proceedings in the Bankruptcy Court, including preference actions. The dual nature of the confirmed plan and confirmation order as both a contract and a court order creates confusion regarding the roles of the Bankruptcy Court after confirmation.

4 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* § 95:1 (1994).

■ "A bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding only to the extent provided in the plan of reorganization." *In re Johns–Manville Corp.*, 7 F.3d 32, 34 (2d Cir.1993). However, "[a] court cannot write its own jurisdictional ticket." *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir.1994). *See Harstad v. First American Bank*, 39 F.3d 898, 902 (8th Cir.1994) (provision of Chapter 11 plan providing for bankruptcy court to retain jurisdiction of certain matters post-confirmation "cannot and does not *confer* jurisdiction upon the court, as only Congress may do that."). "Once a plan of reorganization is confirmed, and unless the plan otherwise provides (which the Plan here does not), the property of the bankruptcy estate vests in the debtor and the debtor is discharged from his pre-petition debts. 11 U.S.C. § 1141 (1988). Ordinarily, then, subject to exceptions not relevant here, the rule is that the estate is dissolved upon confirmation of the plan." *Harstad*, 39 F.3d at 904. *See In re Lacy*, 183 B.R. at 894.

### Analysis

■ Powell's suggestion that this case is patently outside the bankruptcy court's jurisdiction clearly overstates the point. The bankruptcy court obviously has an obligation to evaluate at the outset of any adversary proceeding whether it has jurisdiction to consider pending claims. In this case, the bankruptcy court's determination that it had subject matter jurisdiction turned in part on what it perceived to be violations of the bankruptcy code. If Powell was a complete stranger to AFS prior to confirmation of its reorganization plan, and if Powell had brought a lawsuit against AFS solely based upon an alleged breach of a post-confirmation employment agreement with AFS, the bankruptcy court's determination that it has subject matter jurisdiction would arguably be more tenuous. As stated by the bankruptcy court and as acknowledged in part by Powell, he was not a complete stranger to AFS prior to confirmation of the plan. Surely Powell would concede that if his acts or omissions violated the bankruptcy code and/or the provisions of the confirmed plan that the bankruptcy court would have jurisdiction to consider and fashion an appropriate sanction or remedy for such violations. Decocted to its

simplest form, Powell's challenge in part is really an attack on the factual and legal conclusions of the bankruptcy court regarding his alleged transgressions of the bankruptcy court. To that extent, Powell's subject matter jurisdiction challenge essentially posits the conundrum of "Which came first, the chicken or the egg?"

In any event, whether or not Powell's acts actually violated the bankruptcy code, it appears that his substantial, post-confirmation claims fall within the bankruptcy court's "related to" jurisdiction. Although the parameters of such jurisdiction are not well-defined,[4] it appears that this case falls within the ambit of "related to" jurisdiction.

> Most courts have used the same standard that is used preconfirmation, that in order for there to be such jurisdiction post-confirmation, the resolution of the case must significantly effect the outcome of the bankruptcy case, or in this situation the reorganization. This is an elusive standard, but only one court has stated that it could have jurisdiction over a post-confirmation dispute even if it did not effect the outcome of the reorganization.

*Norton Bankruptcy Law and Practice 2d* § 95:10. Having reviewed numerous cases struggling with the issue, it is apparent that there is no agreed-upon bright-line test or slide-rule formula for determining whether it is appropriate for the bankruptcy court to exercise jurisdiction over post-confirmation matters that could exist outside of bankruptcy. *See In re Almac's, Inc.*, 202 B.R. 648, 654–55 (D.R.I.1996) (discussing divergent views concerning post-confirmation "related to" jurisdiction). In this case, and in light of the substantial size of Powell's claims, his personal relationship both before and after confirmation, and the close temporal relationship between confirmation and the origin of his claims, the court concludes that the bankruptcy court had subject matter jurisdiction to consider these disputes.

Having reached this conclusion, the court will now turn its attention to Powell's nonjurisdictional attacks on the bankruptcy court's decision. As a general observation, the bankruptcy court's determination that Powell had no enforceable claim against AFS stemmed from its conclusion that by failing to obtain prior approval by the bankruptcy court, Powell violated one or more provisions of the bankruptcy code. Based upon those perceived violations, the bankruptcy court concluded that preclusion of Powell's claims was an appropriate remedy. Had Powell violated the bankruptcy code and/or failed to abide by the terms of the plan, the court would agree that preclusion of his claims would possibly be a proper exercise of the equitable powers of the bankruptcy court. However, because the court concludes that Powell's claimed compensation agreement was not one that required prior bankruptcy court approval under either the bankruptcy code or the confirmed plan, preclusion of his claims against AFS was inappropriate.

### Sections 1129(a)(4) and 1129(a)(5)

Powell contends that the bankruptcy court erred in concluding that the disclosure requirements of §§ 1129(a)(4) and (5) bar his claims against AFS. Powell admits that prior to confirmation of the plan, he engaged in preliminary discussions with AFS regarding his continued employment. Powell contends, however, that it was not until approximately one month after confirmation that his purported employment and compensation agreement with AFS was agreed upon and finalized. Powell contends that § 1129(a)(5) only requires disclosure of known and established parties and compensation agreements, not agreements that are not yet determined, and therefore under no circumstance was § 1129(a)(5) violated.

Assuming, *arguendo*, that § 1129(a)(5) was violated, Powell contends that the remedy fashioned by the bankruptcy court was completely unwarranted and was based upon an inappropriate application and interpretation of the bankruptcy code. Because § 1129(a)(5) is one of the thirteen requirements for confirmation of the plan under Chapter 11, non-compliance with that section could at most have served as a basis for

---

**4.** "One area that has provoked considerable controversy is the jurisdiction of the court after confirmation over adversary proceedings between the debtor or reorganized debtor and third parties or between third parties exclusively." *Norton Bankruptcy Law and Practice 2d* § 95:10.

denying confirmation of the plan. Powell contends that because the plan was confirmed, the "Confirmation Order is final and it is binding on any § 1129 issues which are now extinguished." "The bankruptcy court could not therefore rely on any perceived non-compliance with § 1129(a)(5) as the sword to cut down Appellant's agreement with the Appellee." Powell also contends that because the onus fell on AFS to propose the plan, it is grossly inequitable for him to bear the cost of AFS's failure to comply with the requirements § 1129. Because Powell invested four years of hard work based upon his reasonable belief that the incentive agreement was enforceable, while AFS enjoyed the benefits of his labors for a mere $150,000 per year, Powell contends that the bankruptcy court's ruling was unjust.

Powell contends that no case has ever interpreted § 1129(a)(4) to apply to persons who work for the reorganized debtor, post-confirmation, as employees of the company. Powell essentially argues that the disclosure requirements of § 1129(a)(4) only apply to work performed pre-confirmation. Powell contends that if § 1129(a)(4) applies to him, then it must apply to every preconfirmation employee who is retained post-confirmation.

AFS responds, arguing that Powell improperly relies on cases which hold that there is no duty to disclose when it is impossible for the proponent of the plan to know who to disclose under § 1129. Because Powell's employment was allegedly considered by AFS prior to the effective date of the plan, it is AFS's contention that disclosure of the agreement was required even though that agreement was not finalized. "In the present case, Mr. Powell's alleged employment agreement should have been disclosed because on the effective date of the Plan he 'intended' to serve under the terms of the agreement."

In regard to Powell's contention that the remedy fashioned by the bankruptcy court was inequitable, AFS notes that "Powell was paid generously for the work he performed for AFS." "Before and after the Plan was confirmed, Powell received compensation in excess of $150,000 per year, plus other employee benefits. Only his claim for additional incentive compensation was disallowed by the bankruptcy court." AFS contends that § 1129 was written to protect creditors and therefore it makes no difference who was at fault for failing to make the required disclosures; because Powell's alleged compensation agreement would cut into the size of the bankruptcy estate, that agreement should have been disclosed. Because the bankruptcy court concluded that the alleged compensation agreement was invalid under § 1129, AFS contends that the bankruptcy court properly precluded Powell from seeking payments under that alleged agreement.

In regard to Powell's challenge to the applicability of § 1129(a)(4), AFS contends that Powell cites no cases in support of his position. AFS contends that this case is not archetypal because Powell was not a typical employee of a reorganized debtor because his alleged incentive agreement would entitle him to a percentage of certain prepetition assets of the bankruptcy estate that were collected pursuant to the plan and would substantially reduce the amount of money available to pay creditors. AFS also contends that the agreement alleged by Powell is "akin" to an attorney's contingent fee arrangement and therefore should have been disclosed under § 1129(a)(4).

### Analysis

Section 1129(a) provides in pertinent part:

The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

(4) Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

### Section 1129(a)(5)

■ Article 9.9 of the confirmed plan states that AFS would have the right to "employ, compensate, retain or replace professionals, including, without limitation, officers, employees, attorneys, accountants, actuaries, and investment advisors," but did not identify the actual person or their compensation being contemplated. The disclosure statement provided the following additional information regarding post-confirmation employees:

No commitments have been made to any individuals to serve as officers of AFS after the Effective Date, and no post-confirmation compensation plans or programs have been approved for officers of AFS. The AFS Reconstituted Board has not yet determined who they will elect as the officers of AFS. AFS intends to disclose at the Confirmation Hearing any decisions made by that time. It is also anticipated that current employees of AFS, SFSC, and other Debtors will continue as employees of AFS and some of those individuals may, at the sole discretion of the AFS Reconstituted Board, become executive officers of AFS.

### DISCLOSURE STATEMENT RELATING TO THE FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF AMERICA CARRIERS, INC., AMERICAN FREIGHT SYSTEM, INC., USA WESTERN, INC., SIOUX FALLS SERVICE CENTER, INC., AND SMITH'S TRANSFER CORPORATION (Bankruptcy Dk. 3853) at 55.

The court concludes that Powell's alleged post-confirmation agreement did not violate § 1129(a)(5). In regard to that post-confirmation agreement, the plan accurately describes and therefore properly discloses the facts known at the time the plan was proposed.[5] No commitments by AFS had been made to Powell regarding his post-confirmation employment and compensation. The bankruptcy court's conclusion that the agreement had sufficiently jelled prior to confirmation so as to necessitate disclosure under section 1129(a)(5) is not supported by the purported facts or the code itself. AFS denies the existence of any such agreement. Although Powell admits that his continued employment was discussed prior to confirmation of the plan, he does not seek to enforce any agreement that was struck preconfirmation. Powell apparently only seeks to enforce an agreement which was offered by AFS and accepted by him after confirmation. If such an agreement ever came into existence, it was only agreed upon after confirmation and as such could not have been disclosed in the proposed plan as it did not exist.

It is extremely doubtful that § 1129(a)(5) would require the proponent of the plan to disclose such a tentative, speculative and inchoate agreement. Obviously AFS was not required to disclose Powell's unilateral hope that he would remain an AFS employee. The fact that Powell's name was being considered by AFS as a potential employee but not specifically disclosed in the plan did not constitute a violation of § 1129(a)(5). AFS did not "propose" to retain Powell at the time the plan was submitted. Section 1129(a)(5)(B) states that the "identity of any insider that *will* be employed or retained by

---

5. As discussed below, the provisions of a confirmed plan are res judicata. The opportunity to challenge those provisions by appellate review has long-since passed. Consequently, AFS is bound by those provisions of the plan that it proposed and were approved by the bankruptcy court.

the reorganized debtor, and the nature of any compensation for such insider" shall be disclosed. Nor does the fact that Powell's purported incentive agreement may have saddled him with a conflict of interest change this conclusion. The fact that AFS's post-confirmation agreement with Powell may have been a very bad one for AFS does not establish a violation of either the code or the confirmed plan.

It probably deserves mention that it is not the mere fact that Powell was employed by AFS after confirmation that in and of itself gives rise to any dispute of which the parties are concerned. In fact, AFS notes in its own brief that Powell was compensated for his post-confirmation work in the form of a $150,000 a year salary. No one apparently contends that he should disgorge those amounts for the putative violation of § 1129(a)(5). Powell's purported incentive agreement is the only disputed amount. Because it is not the fact of his employment that gives rise to the dispute but instead the existence of the purported incentive agreement, in light of paragraph 26 of the order confirming AFS's plan it is doubtful that barring Powell's claims against AFS for its [6] failure as proponent of the plan to disclose his potential employment, even if in violation of § 1129(a)(5), would be an appropriate remedy.

### Section 1129(a)(4)

■ After confirmation, a reorganized debtor, subject to the terms of the plan, is generally intended to proceed as any other business entity. *See In re Briscoe Enterprises Ltd., II,* 138 B.R. 795, 809 (N.D.Tex. 1992) ("[U]pon plan confirmation, a debtor is no longer a debtor in possession and the bankruptcy estate ceases to exist. *In re NTG Indus., Inc.,* 118 B.R. 606, 610 (Bankr. N.D.Ill.1990). In other words, the reorganized debtor is a new entity not subject to the jurisdiction of the bankruptcy court, except as provided in the plan. Therefore, approval of fees for post-confirmation services is not required."). However, a liquidating agent, one of the roles occupied by AFS under the confirmed plan, is generally sub-

ject to the provisions of the code post-confirmation. *See, e.g., In re Schultz,* 69 B.R. 629, 631 (D.S.D.1987) (conduct and compensation of liquidating agent should be regulated by the terms of the Chapter 11 plan); 4 *Norton Bankruptcy Law and Practice 2d* § 95:8 ("The court appears to have the jurisdiction to appoint a liquidating trustee or agent or committee in implementation of the plan. However, after that appointment has been made, the court will exercise jurisdiction over that liquidating trustee, agent or committee only if the remaining acts of the liquidation trustee can fairly be defined as implementation.").

■ As Powell suggests, §§ 1129(a)(4) and (a)(5) generally concern the disclosure requirements imposed at the time the plan is proposed through the time that the plan is confirmed.

> Bankruptcy Code section 1129(a)(4) specifically prevents the Court from approving a plan of reorganization unless all costs and expenses in connection with the case are subject to approval by the Court as being reasonable. The reason Congress has required this approval by the Court is to insure reasonableness, maximize the results for creditors and to prevent administrative creditors, who are granted priority, from overreaching.

*In re Allegheny Intern., Inc.,* 134 B.R. 814, 817 (Bkrtcy.W.D.Pa.1991). Section 1129(a)(4)

> is nearly identical to § 221(4) of the Bankruptcy Act of 1898, which was designed to "eliminate the practice of fixing reorganization fees and expenses by private arrangement, thereby decreasing the effective amount of recovery of the creditors." *In re P-R Holding Corp.,* 147 F.2d 895, 899 (2d Cir.1945). *See also 6A Collier on Bankruptcy* ¶ 11.09, 245 (14th ed. 1977): "Section 221(4) ... is one of the many protective measures of Chapter X designed to afford a comprehensive judicial supervision of all compensation and expenses in reorganization cases." (Footnote omitted.)

---

6. In light of the court's other conclusions it is unnecessary for the court to decide Powell's al-

ternative argument—that it is unfair for him to suffer for AFS's oversight in its proposed plan.

*In re Southern Indus. Banking Corp.*, 41 B.R. 606, 610 (Bankr.E.D.Tenn.1984) (footnote omitted). Not surprisingly, Chapter 11 plans routinely contain the express provisions of § 1129(a)(4). *See, e.g., In re Briscoe Enterprises Ltd., II*, 138 B.R. at 816–17. By its own terms, however, § 1129(a)(4) applies even to certain post-confirmation transactions that are "in connection with the plan and incident to the case."

■ To an extent, this case is not dissimilar to other Chapter 11 cases. Paragraph 5 of the order confirming the joint plan of reorganization essentially tracks the language of § 1129(a)(4):

5. All payments made or to be made by the Debtors for services or costs and expenses in or in connection with these Chapter 11 Cases, or in connection with the Joint Plan and incident to these Chapter 11 Cases, incurred prior to the Confirmation Date, are reasonable or, if to be fixed after confirmation, shall be subject to the approval of the Court.

*ORDER CONFIRMING FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF AMERICAN CARRIERS, INC., AMERICAN FREIGHT SYSTEM, INC., USA WESTERN, INC., SIOUX FALLS SERVICE CENTER, INC., AND SMITH'S TRANSFER CORPORATION, AS MODIFIED* (Bankruptcy Dk. 4579) at 7.

However, as an apparent exception to or limitation of paragraph 5, paragraph 26 of the same order confirming the joint plan of reorganization states:

Fees and other charges with respect to post-confirmation attorney and other professional services authorized by and provided to the Debtors, or any of them or to Reorganized AFS or Reorganized ACI, are not subject to approval of the Court.

*ORDER CONFIRMING FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF AMERICAN CARRIERS, INC., AMERICAN FREIGHT SYSTEM, INC., USA WESTERN, INC., SIOUX FALLS SERVICE CENTER, INC., AND SMITH'S TRANSFER CORPORATION, AS MODIFIED* (Dk. 4579) at 17.

As a general observation, the post-confirmation services performed by Powell for AFS arguably fall within the scope of § 1129(a)(4). Under that provision, the reasonableness of even his post-confirmation compensation appears to have been in connection with the plan and incident to the case therefore should have been subject to review by the bankruptcy court. The legislative history of section 1129(a)(4) supports this conclusion. *See* S.Rep. No. 95–989, at 126 (1978), reprinted in 1978 *U.S.C.C.A.N.* 5912.[7] Absent paragraph 26, the court would agree that Powell's "incentive agreement" would be subject to review by the bankruptcy court under § 1129(a)(4).

■ Noticeably absent from any of the bankruptcy court's orders is any discussion of paragraph 26 of the order confirming the joint plan of organization. Powell presented this argument to the bankruptcy court but the bankruptcy court's orders are silent in regard to this provision. No party apparently filed a timely appeal from the order confirming AFS's plan. Consequently, all of the parties, including AFS were bound by the terms of the plan and the order confirming the plan.

The doctrine of res judicata applies in the bankruptcy context. *Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Turshen v. Chapman*, 823 F.2d 836, 839 (4th Cir.1987). A bankruptcy court's order of confirmation is treated as a final judgment with res judicata effect. *Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S.Ct. 134, 136–37, 83 L.Ed. 104 (1938); *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 162 (4th Cir.1993); *see also* 5 Collier on Bankruptcy P 1141.01[1] (15th ed. 1989). Pursuant to 11 U.S.C. § 1141(a), all parties are bound by the terms of a confirmed plan of reorga-

7. Paragraph (4) is derived from section 221 of chapter X. It requires that any payment made or promised by the proponent, the debtor, or person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with the case, or in connec-

tion with the plan and incident to the case, be disclosed to the court. In addition, any payment made before confirmation must have been reasonable, and any payment to be fixed after confirmation must be subject to the approval of the court as reasonable.

nization. *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458, 463 (6th Cir. 1991). Consequently, parties may be precluded from raising claims or issues that they could have or should have raised before confirmation of a bankruptcy plan, but failed to do so. *Turshen,* 823 F.2d at 839 ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts.") (citation omitted); *see also Chattanooga Wholesale,* 930 F.2d at 463; *Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I),* 160 B.R. 374, 377 (9th Cir. BAP 1993) (listing cases), *aff'd,* 59 F.3d 175 (9th Cir.1995). More specifically, federal courts have consistently applied res judicata principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant proposed plan of reorganization or to appeal the confirmation order. *See, e.g., Department of Air Force v. Carolina Parachute Corp.,* 907 F.2d 1469, 1473–74 (4th Cir.1990); *[In re] Justice Oaks, [II, Ltd.],* 898 F.2d [1544] at 1552 [ (11th Cir.1990) ].

*In re Varat Enterprises, Inc.,* 81 F.3d 1310, 1315 (4th Cir.1996); *see In re Laing,* 31 F.3d 1050, 1051 (10th Cir.1994) (confirmed Chapter 11 plan binds debtor as a final judgment on the merits); *Paul v. Monts,* 906 F.2d 1468, 1471 (10th Cir.1990) (" 'The general rule is that a confirmed plan or reorganization is binding on the debtor and other proponents of the plan.' *In re Garsal Realty, Inc. (Garsal Realty, Inc. v. Troy Sav. Bank),* 39 B.R. 991, 994 (N.D.N.Y.1984). In fact, confirmation of a plan also binds creditors and other parties in interest even if such entities have not accepted the plan.").

Right or wrong as a statement of federal bankruptcy law,[8] paragraph 26 of the order confirming AFS plan binds all of the parties, including AFS. *See In re Laing,* 31 F.3d at 1051–52 ("The plan's stipulation, along with the order declaring the debt nondischargeable, binds [the debtor] 'regardless of whether that provision is inconsistent with the bankruptcy laws' because 'it is nonetheless

included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed.' ") (quoting *Republic Supply Co. v. Shoaf,* 815 F.2d 1046, 1050 (5th Cir.1987)); *In re Spirco, Inc.,* 201 B.R. 744 (Bankr.W.D.Pa.1996) ("Since enactment of the Bankruptcy Code, several courts of appeals have held that a confirmed plan of reorganization containing a provision that violates the Bankruptcy Code that is not appealed is binding and enforceable notwithstanding its illegal provision."); 4 *Norton Bankruptcy Law and Practice 2d* § 95:3 ("Most objections are lost unless they are made before plan confirmation; all provisions of a confirmed plan have a *res judicata* effect unless they unconstitutionally deprive a party of rights."); *but see Matter of Escobedo,* 28 F.3d 34, 35 (7th Cir.1994) (Chapter 13 plan which failed to include mandatory provisions of § 1322(a)(2) has no *res judicata* effect as to omitted priority claims); *In re Allegheny Intern.,* 134 B.R. at 817 ("No provision of a plan of reorganization can violate the clear statutory language of 11 U.S.C. Section 1129(a)(4).").[9] To at this point in time allow AFS (or for that matter any of AFS's creditors) to cry "foul" to a provision of the order confirming the plan not now to its liking strikes the court inappropriate under principles of res judicata and simple fairness. Moreover, in light of the plain and unambiguous language of paragraph 26, it seems wholly unreasonable to have expected Powell to seek judicial review of his post-confirmation employment agreement with AFS.

### Section 327

As an alternative holding, the bankruptcy court concluded that under § 327(a) Powell was required to obtain prior court approval to work in his position with AFS. Specifically, the bankruptcy court stated:

Mr. Powell had acted as an attorney for AFS prepetition and during the chapter 11. Post-confirmation, he was hired as an employee working primarily, if not exclusively, on AFS's lawsuits against shippers,

---

8. This case perhaps demonstrates the wisdom of including the provisions § 1129(a)(4) in all bankruptcy plans.

9. AFS does not contend that the plan should be revoked, nor does it appear that such an action would be appropriate at this late date.

and was to act as an expert witness and co-counsel. In order for him to be hired to act as such a professional for AFS in connection with the collection of its prepetition assets, both Mr. Powell's employment and the reasonableness of this compensation had to be approved by the Court, even if the hiring took place after confirmation and the effective date of the plan. No Court approval of his employment for these purposes was ever sought. Without such approval, he cannot enforce his agreement against any of AFS's assets that are or were in its bankruptcy estate. 2 *Collier on Bankruptcy*, ¶ 327.02 at 327–6 to –17 (15th ed. 1994).

Beyond this, even if asked to approve Mr. Powell's alleged agreement, the Court would probably have refused to do so, due to the conflict of interest discussed above. The structure of the incentive provision gave Mr. Powell an interest at least partially adverse to AFS's estate and would have placed the motivation of his expert testimony in question. Indeed, his incentive provision may have influenced him in reaching the conclusion that he and AFS could be penalized if they settled any freight undercharge suits for less than the filed tariff rate they believed applied. At least once such collection suits are before a court, when deciding whether to settle for less than it would be entitled to receive under the tariff it believes applies, the carrier must be able, despite the filed rate doctrine, to take into account the costs and delays of litigating and the risk the factfinder will conclude a different tariff applies to the shipments in dispute.

Having failed to obtain either the consent of the interested parties through the confirmation process with the full disclosure required by § 1129(a)(5) or the Court's approval as required by § 1129(a)(4) and § 327, Mr. Powell had no enforceable agreement with AFS for the sort of compensation he claims he was entitled to, and so has no allowable claim against AFS's estate. The Court would disallow any claim Mr. Powell might make

against the estate based upon this unapproved, alleged agreement.

## MEMORANDUM OF DECISION ON MOTIONS TO DISMISS AND TO REMAND at p. 11–12.

Powell contends that the bankruptcy court's interpretation of § 327(a) was erroneous. Specifically, Powell contends that § 327(a) only applies preconfirmation and that by the very terms of the Plan, the bankruptcy court had no jurisdiction over the hiring of post-confirmation professionals. Therefore the bankruptcy court's reliance on § 327(a) to preclude him from asserting his claims against AFS was erroneous.

Powell also contends that he was a member of existing management, not a professional. Powell suggests that his preconfirmation and post-confirmation job duties were identical. Because he was simply an employee of AFS, his continued employment required no more approval than anyone else. Powell contends that § 327 only applies to persons who deal with the actual reorganization of the debtor, rather than the ongoing business of the debtor. Because he was not involved in the reorganization process, by its terms § 327 does not apply. Powell argues that if he was an "insider" as the bankruptcy court found, then by definition § 327 did not apply. Powell also contends that the mere fact that he is an attorney did not make him a disinterested expert contemplated by § 327.

Assuming, *arguendo*, that § 327 did apply, Powell contends that the bankruptcy court erred in fashioning a remedy which strips him of his right to pursue his contract and tort claims against AFS.

AFS responds, arguing that the bankruptcy court's decision was based upon a proper interpretation of the law and facts. AFS contends that Powell was clearly a person to whom § 327 applied. AFS contends that under the terms of the Plan, it was required to act as the debtor-in-possession to continue to liquidate the property of the estate.[10] Under Article IX of the Plan, "AFS, on behalf of the debtor's estates will have all the rights

---

10. According to the bankruptcy court, AFS had two capacities. One was to act as debtor in possession to liquidate the property of the estate "and the other as something else."

and powers of a trustee under the bankruptcy code. AFS argues that "[i]n order to exercise those powers, however, AFS was required to comply with the relevant provisions of the Bankruptcy Code." Under this provision, AFS contends that § 327 applies to Powell. AFS contends that like the remedy fashioned in regard to the violations of the disclosure requirements of § 1129(a)(5), the remedy fashioned by the bankruptcy court was reasonable.

■ In his reply, Powell again reiterates that § 327 is inapplicable to his post-confirmation position by both the terms of the bankruptcy code and the terms of the Plan itself. Powell also contends that "[m]uch to [his] misfortune, the consequences of this mistaken application of § 327 are visited upon him." Powell contends that if anyone should bear the brunt of non-compliance with § 327, it should be AFS. "Surely it is the debtor's burden therefore to satisfy the court approval requirement of § 327 in order to implement that employment decision. To suggest otherwise is sheer folly. It cannot be reasonably argued that the professional is required to assume the task of obtaining court approval for his employment under § 327." [11]

### Analysis

Section 327, Employment of professional persons, provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(b) If the trustee is authorized to operate the business of the debtor under section 721, 1202, or 1108 of this title, and if the debtor has regularly employed attorneys, accountants, or other professional persons on salary, the trustee may retain or replace such professional persons if necessary in the operation of such business.

■ "In bankruptcy proceedings, professionals who perform services for a debtor in possession cannot recover fees for services rendered to the estate unless those services have been previously authorized by a court order." *In re Atkins,* 69 F.3d 970, 973 (9th Cir.1995); see Fed.R.Bank.P. 2014(a).[12] "Section 327 also governs the employment of a professional person by a debtor in possession." *In re Atkins,* 69 F.3d at 973, n. 2; see 11 U.S.C. § 1107(a).

Whether the requirements of § 327 apply post-confirmation is not frequently discussed. In general, cases discussing the applicability of § 327 have involved disputes regarding payment for services rendered prior to or at the time of confirmation. Cases discussing the applicability of § 327 to fees earned post-confirmation (other than cases discussing "mopping-up" type fees) are rare but do exist. For example, in *In re Placid Oil Co.,* 158 B.R. 404 (N.D.Tex.1993), the district court affirmed the bankruptcy court's order to the extent that it ordered disgorgement of $132,223.93 in unauthorized post-petition/post-confirmation attorney's fees paid to him by a Chapter 11 debtor. The district court, *inter alia,* rejected the attorney's con-

---

**11.** This particular suggestion by Powell is incorrect. *See In re Jarvis,* 53 F.3d 416 (1st Cir.1995) (Despite realtor's yeoman work for bankruptcy estate, mere oversight of failing to seek authorization to hire him as required by bankruptcy court under § 327 warranted bankruptcy court's denial of trustee's *post facto* application for payment); 2 Lawrence P. King, *Collier on Bankruptcy* ¶ 327.02 (15th ed. 1994).

The court notes, however, that a professional failing to obtain court authorization prior to performing services for the debtor in possession may nevertheless seek retroactive approval from the bankruptcy court. *See In re Atkins,* 69 F.3d 970, 973 (9th Cir.1995) (bankruptcy courts possess the equitable power to approve retroactively a professional's valuable but unauthorized services). The Ninth Circuit has held "that such retroactive approval should be limited to situations in which 'exceptional circumstances' exist." *Id.*

**12.** Bankruptcy Rule 2014(a) provides: "An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professional persons pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee...."

tention that the bankruptcy court did not have the authority to order disgorgement:

The court first considers the contention that the bankruptcy court did not have authority to order the disgorgement of fees because the fees were not related to the Placid bankruptcy. On the basis of the settled proposition that "related to" jurisdiction requires that a proceeding have some effect on the administration of the debtor's estate, Wright argues the tax litigation was not related because any liability would have been paid by Placid post-confirmation. According to Wright, it therefore follows that the tax litigation was not related to the Placid bankruptcy. The court disagrees.

As the court notes supra at § II, § 329 empowers the bankruptcy court to control attorney's fees incurred in a proceeding that is related to a bankruptcy case. The test for determining whether a proceeding is related to a bankruptcy is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re REPH Acquisition Co.*, 134 B.R. 194, 203 (N.D.Tex.1991) (emphasis in original). "[I]f the outcome of the proceeding could alter the debtor's rights, liabilities, options, or freedom of action, there is 'related to' jurisdiction." *Id.* (rejecting contention that eviction suit could not harm estate, and therefore proceeding was not "related to" bankruptcy case, because plan had been confirmed and estate had been concluded). An action is related to a bankruptcy case if it could impact the execution of the reorganization plan and actions in administering the estate. *Id. (citing In re Majestic Energy Corp.*, 835 F.2d 87, 91 (5th Cir.1988)). The record below reflects that the determination of Placid's potential tax liability for an administrative claim of over $12 million in postpetition taxes could conceivably have an effect on the Placid estate. The court therefore had jurisdiction to decide the question of disgorgement pursuant to § 329. Its determination whether the fees should be disgorged was a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

Additionally, the confirmed Placid reorganization plan retained jurisdiction over administrative claims litigation and approval of compensation for attorneys and other professionals. This, too, conferred jurisdiction upon the bankruptcy court.

158 B.R. at 418 (footnote omitted). *But see* 1 *Norton Bankruptcy Law and Practice 2d* § 25:1 ("Attorneys for individual creditors, a Chapter 7 debtor or a Chapter 11 debtor after confirmation of a plan need not obtain court approval.").

 This case is distinguishable from *In re Placid Oil* in that the order confirming this plan expressly states that compensation to post-confirmation attorneys and other professionals are not subject to court approval. In the absence of paragraph 26, the court would agree that Powell's compensation, including the alleged incentive agreement, could be subject to review by the bankruptcy court. However, based upon the plain language of that portion of the order confirming the proposed plan, Powell's post-confirmation incentive agreement was not subject to bankruptcy court review.

AFS correctly argues that other provisions of the plan seemingly required Powell to submit his compensation package to the bankruptcy court for approval. However, paragraph 26 appears to be a specific finding (correct or not) that post-confirmation compensation to certain employees is not subject to bankruptcy court approval.

### Denial of Costs for Removal

Powell dedicates a total of two paragraphs of his opening appellate brief to the issue of whether the bankruptcy court erred in refusing to grant his requests fees and costs related to the defendants' "wrongful" removal of his case to federal court. Powell contends that "[s]ince the court ultimately remanded the action, the court had to have determined that the removal was wrongful; Powell is entitled to damages." Powell cites no cases in support of his position.

AFS responds, arguing that the bankruptcy court had jurisdiction over Powell's claims against it under 28 U.S.C. § 1334 or under supplemental jurisdiction under 28 U.S.C. § 1367. AFS contends that remanding the

viable supplemental claims to state court was within the bankruptcy court's discretion. As there was no impropriety in removing Powell's state case to federal court, the bankruptcy court's failure to award fees or costs was a reasonable exercise of its discretion.

Powell's reply brief does not address any of the arguments advanced by AFS in regard to his requests for fees or costs.

■■■ "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c).[13] The decision to award fees and costs lies in the discretion of the district court. *See Bucary v. Rothrock,* 883 F.2d 447 (6th Cir.1989); *First Nat. Bank & Trust Co. v. Nicholas* 768 F.Supp. 788, 792 (D.Kan.1991); *Cohen v. Hoard,* 696 F.Supp. 564, 567 (D.Kan.1988). Generally, the court is more likely to award costs in removal actions that are frivolous. *Bucary,* 883 F.2d at 449.

Based upon essentially the same analysis of the issues presented in this case regarding subject matter jurisdiction, it is clear that the bankruptcy court did not abuse its discretion in failing to award Powell fees or costs for the defendants' removal of his state case to federal court.

### What Happens Now

■■■ In their respective briefs, the parties apparently viewed this appeal as an all or nothing proposition. Resting on his subject matter jurisdiction argument, Powell believed that this entire matter would be dismissed and that he would be free to pursue his claims against AFS in state court. Alternatively, Powell believed that the bankruptcy court's errors would necessitate a remand of his claims against AFS to state court. Other than the issue raised in its conditional cross-appeal, AFS apparently believed that the bankruptcy court had jurisdiction and that even if it did not that its decisions would be

affirmed on one or more grounds. Neither side has achieved complete victory.

As a recurrent theme throughout Powell's appellate briefs, he contends that the bankruptcy court's ruling deprived him of his Seventh Amendment right[14] to a trial by jury. In light of the court's conclusion that there is "related to" jurisdiction and that removal of his state case therefore was not wrongful, Powell may now assert his contract and tort claims against AFS in federal court. Neither of those claims are equitable in nature, and therefore Powell apparently has a Seventh Amendment right to a jury trial on those claims.[15] However, the Tenth Circuit has held that bankruptcy court's do not have authority to try jury trials. *See In re Latimer,* 918 F.2d 136, 137 (10th Cir.1990) (bankruptcy courts do not have the authority to conduct jury trials, so a party seeking a jury trial must also seek withdrawal of the reference to the bankruptcy court); *In re Kaiser Steel Corp.,* 911 F.2d 380, 389–92 (10th Cir. 1990) ("Where the seventh amendment requires a jury trial to be held in bankruptcy, that trial must take place in the district court, sitting in its original jurisdiction in bankruptcy."); *see In re Clay,* 35 F.3d 190 (5th Cir.1994). Consequently, to honor Powell's request for a jury trial, this matter must be tried in district court. As the case is before this court, and knowing of no reasonable justification for remanding the case to bankruptcy court and requiring Powell to formally seek withdrawal of reference and transfer to district court, the court intends to simply keep these cases.

### One More Thing

Recognizing the possibility that the bankruptcy court's ruling might be reversed, AFS filed a conditional cross-appeal on the issue of whether the bankruptcy court abused its discretion in remanding Powell's claims against Anuhco, Inc., John P. Bigger and

---

13. Section 1447 was amended in 1988. The amendment specifically authorizes the award of "actual expenses, including attorney fees."

14. "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." U.S. Const. amend. VII.

15. Had the bankruptcy court's determination that Powell's incentive agreement with AFS violated the bankruptcy code been correct, that determination would arguably have been equitable in nature and therefore Powell would not have been entitled to a jury determination on that issue. *See In re M & L Business Mach. Co., Inc.,* 59 F.3d 1078, 1082 (10th Cir.1995).

Timothy O'Neil to state court. AFS does not, however, analyze the issue. More importantly, the court is uncertain if the those claims have in fact been remanded to state court.[16] If that has in fact occurred, would appellate review by this court serve any purpose? *See Hunt v. Acromed Corp.*, 961 F.2d 1079 (3d Cir.1992) (event that divests the district court of jurisdiction is the mailing of the certified copy of the remand order to the state court clerk); *Seedman v. United States Dist. Court*, 837 F.2d 413 (9th Cir.1988) ("[A]fter certification to the state court a federal court cannot vacate a remand order issued under section 1447(c)."); *Browning v. Navarro*, 743 F.2d 1069, 1078 (5th Cir.1984) ("Even a federal court, persuaded that it has issued an erroneous remand order, cannot vacate the order once entered."); 1A James Wm. Moore, *Moore's Federal Practice* ¶ 0.169[2.-1] (2nd ed. 1996) ("But the entry of the order of remand and the mailing of a certified copy to the clerk of the state court completely divests the federal court of jurisdiction so that it is powerless to vacate the order of remand."). By making these observations, however, the court expresses no definitive opinion on the issue.

As AFS did not have a crystal ball to foresee this court's rulings in this case, its failure to completely brief this issue is understandable. Within ten days of the date of this order, AFS shall file a pleading indicating whether or not it intends to further pursue the issue raised in its conditional cross-appeal. If it does, the court will set a briefing schedule for the parties to address that issue.

### Summary

This bankruptcy appeal presented several difficult questions, and in deciding this appeal the court has endeavored to resolve a clash between two seemingly divergent principles. On the one hand is the court's obligation to enforce the plain language of the bankruptcy code—a code that seemingly requires as a mandatory provision of a Chapter 11 plan to subject the conduct and compensation of a person such as Powell to judicial review. On the other, is the court's desire to insure that the laudable purposes of res judicata principles are not ignored. Tied to both principles is the court's desire to see that its rulings are equitable and ultimately that the interests of justice are served. Based upon Tenth Circuit precedent, the court believes that in this instance, the latter principle prevails over the former. Although the bankruptcy court's desire to enforce the code is both admirable and understandable, its rulings cannot be squared with the language of its own order confirming the plan. Consequently, Powell may pursue his contract and tort claims against AFS.

IT IS THEREFORE ORDERED that the decisions of the bankruptcy court are affirmed in part and denied in part. Powell may assert his contract and tort claims against AFS arising out of his purported post-confirmation incentive agreement. Powell's claims against AFS shall remain in this court. The bankruptcy court's decision denying Powell's request for fees and costs associated with the defendants' removal of his state case to federal court is affirmed.

IT IS FURTHER ORDERED that AFS shall file within ten days of the date of this order a pleading which indicates whether or not it intends to pursue the issue raised in its conditional cross-appeal.

---

16. The bankruptcy court file holds no clues as to whether those claims were in fact remanded. However, no stay appears in the files, so the court presumes that they have in fact been remanded to state court.