In re AMERICAN FREIGHT SYSTEM, INC., Debtor.

AMERICAN FREIGHT SYSTEM, INC., Debtor in-possession, Defendant/Appellant,

v.

POINT SPORTING GOODS, INC., Plaintiff/Appellee.

No. 93–4110–SAC.
Bankruptcy No. 88–42050–11.
Adv. No. 90–7265.

United States District Court, D.Kansas.

Dec. 23, 1993.

Kurt A. Stohlgren, Hillix, Brewer, Hoffhaus, Whittaker & Wright, Kansas City, MO, for debtor.

Anne L. Baker, Wright, Henson, Somers, Sebelius, Clark & Baker, Topeka, KS, for plaintiff/appellee.

## MEMORANDUM AND ORDER

CROW, District Judge.

This bankruptcy appeal arises out of an adversary proceeding in which the debtor, American Freight System, Inc., seeks to recover $10,446.49 (plus interest and costs) in undercharges it claims are due for the delivery of sporting goods it delivered for Point Sporting Goods. The bankruptcy court granted Point Sporting Goods' motion for summary judgment and denied American

Freight System's motion to reconsider. The bankruptcy court granted American Freight System's motion for Rule 54(b) certification, and American Freight System timely appeals.[1]

## Overview

American Freight System was a motor common carrier subject to the jurisdiction of the Interstate Commerce Commission (ICC). On August 16, 1988, American Freight System filed a voluntary petition under Chapter 11 of the Bankruptcy Code. American Freight System's reorganization plan was subsequently confirmed on June 10, 1991.

On June 28, 1990, American Freight System commenced this adversary action against Point Sporting Goods to recover $10,446.49, plus interest and costs, for transportation services provided by American Freight System prior to commencement of the bankruptcy. On June 25, 1991, Point Sporting Goods filed a motion to dismiss, which was ultimately converted to a motion for summary judgment. On May 11, 1992, the bankruptcy court entered an order granting summary judgment in favor of Point Sporting Goods. On August 13, 1992, the bankruptcy court entered an order denying reconsideration of its order granting summary judgment.

## Chronology of Events

On certain dates in January and February of 1987, American Freight System transported twenty shipments of sporting goods in interstate commerce for Point Sporting Goods. In return for these transportation services, Point Sporting Goods was required to pay American Freight System in accordance with the applicable tariffs on file with the ICC.

For each shipment, Point Sporting Goods prepared shipping orders which stated the number of shipping units, the total weight, and described the goods as "Sporting Goods NOI FAK CL 85." Each time American Freight System accepted Point Sporting Goods' goods for shipment an American Freight System billing clerk entered this information into the American Freight System computer. For each shipment, American Freight System prepared freight bills describing the goods as "Sporting Goods NOI FAK CL 85." The freight bill is identical to the balance due billing prior to handwritten corrections.

American Freight System's method of assessment of rates is that a billing clerk at the terminal location enters information into the computer from a shipping order; the information on the shipping order is provided by the shipper. The shipment appears in a queue at the central rates location where it is rated, usually many hours after the shipment is on line and loaded on an out-bound trailer. The initial rating of the shipment is based upon the information provided and occurs at a rapid pace.

At all times relevant to this case, American Freight System had on file with the ICC tariffs setting forth the legal rates and charges applicable to the transportation provided by American Freight System for Point Sporting Goods, as required by the provisions of 49 U.S.C. § 10761(a) and § 10762. These tariffs were at all relevant times in full force and effect.

The National Motor Freight Classification guide, effective May 10, 1986, included item 15520, which stated as follows:

| Item No. | Articles | Classes LTL |
|---|---|---|
| 15520 | Athletic Goods Group: subject to item 15500<br>Athletic or Sporting Goods, NOI: Including playground apparatus NOI, see Note, items 16632; and including Targets, plastic or rubber; in barrels, boxes or crates, subject to Item 170 and having a density in pounds per cubic foot of: | |
| Sub 1 | Less than 1, see Note, Item 15521 ................................. | 400 |

---

1. On August 24, 1993, this court denied Point Sporting Goods' motion to dismiss this appeal as untimely. *See In re American Freight System,* *Inc.,* 158 B.R. 225 (D.Kan.1993) (a judgment is not effective until it is entered on the docket as required by Bankruptcy Rule 5003).

| Item No. | Articles | Classes LTL |
|---|---|---|
| Sub 2 | 1 but less than 2, see Note, Item 15521 | 300 |
| Sub 3 | 2 but less than 4, see Note, Item 15521 | 250 |
| Sub 4 | 4 but less than 6, see Note, Item 15521 | 150 |
| Sub 5 | 6 but less than 12, see Note Item 15521 | 100 |
| Sub 6 | 12 but less than 15, see Note Item 15521 | 85 |
| Sub 7 | 16 or greater | 70 |

For whatever reason, an American Freight System rate clerk placed a Class 85 rate on each of Point Sporting Goods' shipments. Point Sporting Goods paid American Freight System the charges that were initially assessed by American Freight System pre-petition.

American Freight System admits that it charged and was paid by Point Sporting Goods for its transportation services. American Freight System claims, however, that Point Sporting Goods was undercharged due to the "erroneous" application of rates by an American Freight Systems clerk based upon a reading of the information furnished on the bills of lading. In 1989, over two and a half years after the freight movement, American Freight System, as debtor in possession, conducted an audit of the freight bills originally issued assessing the initial charges. This audit revealed that the *actual* density information did not appear on the bills of lading as required by the published tariffs filed with the ICC.

American Freight System now seeks to recover the freight charges based upon the lowest possible density, Item 15520, subgroup 1. American Freight System seeks to recover under Item 170. Item 170 of the National Motor Classification guide provides:

APPLICATION OF CLASSES—INADVERTENCE CLAUSE

Shipper must show on bills of lading and shipping orders at time of shipment the actual density or density group as provided for in the provisions referencing this item. If the actual density or density group is not shown and shipment is inadvertently accepted, charges will initially be assessed on the basis of the class applicable to the lowest density provided. Upon submission of satisfactory proof of a higher actual density, freight charges will be adjusted to the basis of the class applicable to such density.

Point Sporting Goods denies that Item 170 entitles American Freight System to recover for any alleged undercharges.

On May 11, 1992, the bankruptcy court filed an order granting Point Sporting Goods' motion for summary judgment. After setting forth the relevant facts, the bankruptcy court first concluded that Item 170 is not "the proper item to provide the correct rate under these facts. The clear purpose of Item 170 is to establish a rate when the carrier has not been told the density of the goods shipped. It does not provide a rate when the goods are shipped pursuant to a density classification for which the carrier has no rate on file." The bankruptcy court concluded that Item 170 allows carriers to move goods when the shipper has failed to provide the required density information and for the carrier to assume that the goods being shipped are of the lowest density. Afterwards, the shipper can submit proof of the actual density of the goods shipped, and the shipping charges will be adjusted in accordance with the actual density.

American Freight System argued that identifying the density as FAK CL 85, a classification for which American Freight System had no tariff on file, Point Sporting Goods had failed to provide the "actual density or density group" and so, pursuant to Item 170, American Freight System should be allowed to charge Point Sporting Goods on the basis of the lowest density for which it had a filed tariff. The bankruptcy court disagreed.

First, AFS has failed to convince the Court that the classification FAK CL 85 is not the "actual density or density group." Point has provided an affidavit claiming that the National Motor Freight Carrier Guide shows that goods classified as FAK

CL 85 constitute Item 5520, (sic 15520) subgroup 6, having a density of 12 pounds but less than 15 pounds. AFS has not contradicted this assertion. Point contends that since the classification gives the density of the goods it provides a density group as required by Item 170. AFS has not provided any basis for concluding this is not so.

Whether or not the classification FAK CL 85 is a density group, AFS had actual knowledge of the density that Point claimed applied, and that is all that Item 170 requires. The goal of Item 170 is to allow the carrier to move the shipment in the absence of density information. The last sentence of Item 170 declares that if it is possible to determine the actual density of the goods after they have been moved, then the shipper should ultimately pay the rate applicable to that density. Item 170 does not authorize the shipper to assess retroactively a higher rate than was initially billed. Since the shipments involved here have already been moved and the charges were apparently based on the actual density of the goods shipped, it would be contrary to the intent of Item 170 to go back and change the assessed charges.

Alternatively, the Court concludes Item 170 does not operate to assess higher charges against Point under these facts because AFS did not inadvertently accept the shipment. Although the first sentence of Item 170 states the general rule that a shipper must provide the actual density of density group in a bill of lading, the second sentence makes clear that the shipper's failure to do so will not lead to a higher assessed rate unless the carrier also inadvertently accepts the shipment. AFS contends Item 170 must be construed like a statute, and it is an accepted rule of statutory construction that statutes must be construed so as to give meaning to every word. If the drafter of Item 170 had not intended for inadvertent acceptance to be a separate requirement for the item to be applicable, the drafter would not have included that language. Viewing inadvertent acceptance as a separate condition to the applicability of Item 170 is consistent with the item's goal of moving the goods.

In this case, the uncontroverted facts indicate that there was no inadvertent acceptance. AFS and Point had been shipping goods pursuant to the FAK CL 85 classification before AFS's failure to file a rate for this classification. AFS moved the goods and then billed Point based on the FAK CL 85 classification. Although AFS had apparently inadvertently failed to file a rate for this classification, its acceptance of the goods with information that indicated their density was not inadvertent. In cases like this where the acceptance of the goods is intentional, Item 170 is not necessary to move the goods and thus does not apply.

## CONCLUSION

Since there was no rate on file for the classification FAK CL 895, it may be true that the rate charged was not the proper rate. However, Item 170 is not the appropriate item to replace this possibly erroneous rate. Item 170 is only concerned with density, and only applies when the shipper fails to supply density information. The information in the bills of lading provided AFS with the density of the goods shipped and it deliberately accepted them based on that information, so Item 170 does not apply to these facts.

As indicated previously, AFS has based its claims against Point solely on the applicability of Tariff Item 170. Consequently, Point is entitled to summary judgment on those claims. The Court therefore enters judgment for Point, and denies the relief requested by the debtor.

On August 6, 1992, the Bankruptcy court denied American Freight System's Motion to Reconsider. In pertinent part, that order states:

The only question properly brought before the Court for reconsideration is whether AFS properly controverted the defendant's assertion that the phrase "Sporting Goods, NOI, FAK Cl 85," which the defendant put on each bill of lading, identified the density of the goods being shipped so that Item 170 did not apply. The Court has again reviewed the materi-

als submitted with the original motion to dismiss and objection, and the supplemental briefs filed after the Court informed the parties it would consider the motion as one for summary judgment.

The debtor submitted only the affidavit of its president, Norman Powell, to support its opposition to the defendant's motion. Only one portion of the affidavit appears to address the content of the defendant's bills of lading. In responding to an assertion that the debtor had satisfied itself that a density group subject to the Class 85 rating was applicable, Mr. Powell declared:

> The carrier's actions were nothing more than the erroneous application of rates by a clerk based upon a reading of the information furnished on the bill of lading. The commodity description failed to comport to any description in the National Motor Freight Classification for any specific class, misled the rate clerk that class 85 applied and could only result in correction to the highest class for the lowest density as provided by the tariff for the general description used on the bill of lading.

Thus, he conceded the information on the bill of lading was sufficient to enable the debtor's clerk to determine an applicable rate, but claims the information caused the clerk to apply an incorrect rate. As the Court indicated in granting summary judgment, the defendant presented an affidavit claiming that the National Motor Freight Carrier Guide shows that sporting goods classified as "FAK CL 85" constitute Item 15520, subgroup 6, having a density of 12 pounds but less than 15 pounds, and the debtor failed to contradict this assertion. Mr. Powell's statement does not indicate that no density information was given but that the information given was incorrect or not in the proper form. The Court was forced to conclude the information given sufficiently identified the density of the goods to prevent the application of Item 170, which states it apply only when the shipper fails to provide the actual density of density group. If this conclusion is not in fact correct, the error was caused by the debtor's inadequate response to the defendant's motion.

The Court is convinced its ruling was correct based on the materials presented to support and oppose the defendant's motion. For these reasons, the debtor's motion to reconsider must be denied.

### Standard of Review

In American Freight System's brief, it argues that this court can "reverse the bankruptcy court's findings of fact only upon a showing that they were clearly erroneous." Point Sporting Goods' brief does not contain an express discussion of the appropriate standard of review.

■■■ The question of whether summary judgment was appropriately granted is generally a question of law to be reviewed *de novo*. *See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir.1993) ("We review the grant of summary judgment by the district court *de novo*, apply the same legal standard to the evidence in the record as did the district court."). This same standard applies when the district court, sitting as an appellate court to the bankruptcy court, reviews an order by the bankruptcy court granting summary judgment. *See In re Construction Alternatives, Inc*, 2 F.3d 670, 674 (6th Cir.1993) ("This court reviews *de novo* the decision of the district court reviewing a grant of summary judgment by the bankruptcy court."); *see generally Citizens Nat'l Bank & Trust Co. v. Serelson (In re Burkart Farm & Livestock)*, 938 F.2d 1114, 1115 (10th Cir.1991) (in reviewing bankruptcy court decisions, appellate courts apply same standards of review that govern appeals in other cases).

### Analysis[2]

■■■ The court concludes that the bankruptcy court did not err in granting Point

---

**2.** At the outset, the court notes that a dearth of case law exists which discusses in any meaningful fashion the appropriate interpretation and application of Item 170. The court, using several broad computer research searches, was unable to locate any meaningful guidance from prior case law addressing the proper interpretation and application of Item 170.

Sporting Goods' motion for summary judgment, nor did it err in denying American Freight System's motion to reconsider. As suggested by the bankruptcy court, Item 170 does not serve as a means by which American Freight System can now recover amounts it claims should have been charged to Point Sporting Goods when Point Sporting Goods was originally billed by American Freight System.[3]

By its terms, Item 170 only applies to a limited circumstance: If the actual density group is not shown on the bills of lading and shipping orders at the time the shipper presents the goods for shipment *and* the shipment is inadvertently accepted by the carrier, then the carrier is authorized to *initially* assess shipping charges to the shipper on the basis of the class applicable to the lowest density provided. If the shipper is able to submit satisfactory proof that the goods shipped by the carrier have a higher actual density than the rate *initially* charged by the carrier, the carrier is required to adjust the amount charged to the shipper to reflect the actual basis, or in other words, reduce the amount charged to the shipper as the shipping costs initially billed were based upon the lowest density.

As explained by the bankruptcy court, Item 170 simply provides a mechanism whereby a carrier may immediately ship goods in instances where the shipper fails to provide density information to the carrier, thereby enabling the carrier to transport the goods without needless delay. Concomitantly, the carrier is protected as it is able to initially assess the highest applicable freight cost to the shipper who has not provided the actual density of the goods. Item 170 then offers the shipper who originally failed to supply the necessary density information an opportunity to present evidence proving the actual density of the goods if the density of the goods is actually less than the amount initially assessed by the shipper pursuant to Item 170.

Because Item 170 does not, by its express terms, provide a mechanism by which Ameri-

can Freight System may retroactively assess a higher rate than it initially billed Point Sporting Goods, the bankruptcy court correctly concluded that Point Sporting Goods was entitled to summary judgment.

IT IS THEREFORE ORDERED that the bankruptcy court's May 11, 1992, order granting summary judgment, and its August 13, 1992, order denying reconsideration of its order granting summary judgment are affirmed.

---

**3.** In light of this ruling it is unnecessary for the court to address several other arguments raised by the parties, nor is it necessary for the court to rule on the bankruptcy court's alternative basis for granting summary judgment.