NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. AZ-11-1045-ClJuKi |
| TUSCAN RANCH, INC., | Bk. No. 0:10-14417-JMM |
| Debtor. | |
| TUSCAN RANCH, INC., | |
| Appellant, | |
| v. | M E M O R A N D U M[1] |
| AEA FEDERAL CREDIT UNION, | |
| Appellee. | |

Argued and Submitted on January 18, 2012

Filed - February 2, 2012

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable James M. Marlar, Chief Bankruptcy Judge, Presiding

Appearances:    Robert M. Cook, Esq. Of the Law Offices of Robert
M. Cook, PLLC argued for Appellant Tuscan Ranch,
Inc.; Gregory J. Gnepper, Esq. of Gammage & Burnham
argued for Appellee AEA Federal Credit Union

Before: Clarkson[2],Jury and Kirscher, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

[2] Hon. Scott C. Clarkson, United States Bankruptcy Judge for
the Central District of California, sitting by designation.

-1-

Chapter 11[3] Debtor in Possession and appellant Tuscan Ranch, Inc. ("Tuscan Ranch", "Debtor" or "Appellant") appeals the bankruptcy court's order (the "Order") granting the Motion for Relief from the Automatic Stay to Exercise Set-Off Rights Against Tuscan Ranch's Accounts Held by AEA Federal Credit Union (the "Motion for Relief"). The Appellant identifies three general challenges to the bankruptcy court's order:

(1) Whether the bankruptcy court erred in granting at a preliminary hearing the Motion for Relief;

(2) Whether the Bankruptcy Court erred in denying Tuscan Ranch's Motion for Reconsideration of the Motion for Relief Order ("Motion for Reconsideration"); and

(3) Whether the Bankruptcy Court erred in failing to conduct an evidentiary final hearing relative to the Motion for Relief[4].

For the reasons discussed below, we AFFIRM the bankruptcy court's Order.

## I. **FACTS**

Tuscan Ranch filed its voluntary chapter 11 petition on May 11, 2010, (the "Petition Date") in the District of Arizona, Yuma Division. On the Petition Date, the Debtor had in its bank deposit accounts with AEA Federal Credit Union ("AEA") approximately $122,000.00. On that same date, AEA placed an "administrative freeze" on the deposit accounts.

---

[3] Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[4] This third argument was mentioned only in passing within the opening section of Appellant's Brief and is never later addressed on the merits. The record is devoid of any request for a final hearing made by any party.

On July 26, 2010, approximately 75 days following the Petition Date, AEA filed its "Motion for Relief from the Automatic Stay to Exercise Set-Off Rights Against Tuscan Ranch's Accounts Held by AEA," asserting that (a) on January 31, 2008, the Debtor and AEA entered into a "Commercial Loan Agreement for Loan 536" (the "Loan Agreement"), and other related loans; (b) that at the time of the Petition Date, the Debtor was in default on these loans[5], and (c) that the Loan Agreement, and other related loans, authorized AEA to "set-off any amounts due and payable under the terms of the Loan against any rights the Debtor had to receive money from AEA, which included any deposit accounts that the Debtor had with AEA."[6]

On August 17, 2010, the Debtor filed its Response and Objection to the Motion for Relief from the Automatic Stay, stating that AEA had no setoff rights, but provided no factual specifics to the bankruptcy court regarding this assertion, and that AEA improperly imposed an "administrative freeze". The Debtor further asserted that the "administrative freeze" by AEA constituted a violation of § 362(a)(3) ("any act...to exercise control over property of the estate"), and requested that the Motion for Relief be denied.

---

[5] A proof of claim was filed by AEA on September 14, 2010, as Claim 1-1, which has been submitted within the Appendix to Appeal Brief of AEA, indicating that AEA was owed $1,360,048.44 on the Petition Date for Loans No. 191, 536, 537,540, and 915. Further, the Debtor's schedule D indicates that the AEA was owed at least $895,000.00 by the Debtor.

[6] The Motion for Relief did not cite under which specific provision of § 362(d) (i.e. 362(d)(1) or (d)(2)) relief was being requested, and only that the Movant was entitled to relief under "362" and "362(d)".

-3-

On August 30, 2010, AEA replied to the Debtor's Response and Objection, arguing that there was no dispute that the Debtor's accounts were subject to setoff rights under § 553, that § 553 allows setoff "if the debt was not incurred during the 90 days before bankruptcy, while the debtor was insolvent, or for the purposes of obtaining a set-off right." AEA further discussed and refuted the Debtor's arguments that AEA's administrative freeze was improper, arguing that the Debtor's reliance on the Ninth Circuit's BAP decision of In re Mwanqi, 432 B.R. 812 (9th Cir. BAP 2010), was misplaced in that Mwanqi only restricted the use of administrative freezes on debtors' bank accounts unless and except when setoff rights were being protected.

On December 3, 2010, the bankruptcy court held a preliminary hearing on AEA's Motion for Relief from the Automatic Stay to Foreclose on Security Interests. Both counsel for AEA and Debtor were present at the hearing. At this hearing AEA's counsel informed the bankruptcy court that the parties had agreed to submit this matter without a hearing. The parties informed the bankruptcy court that the matter could be submitted on the briefs.

Neither the Debtor nor AEA sought further briefing opportunities, evidentiary hearings, or final hearings on the Motion for Relief to Exercise Set-off Rights.

On December 7, 2010, the bankruptcy court entered its order granting to AEA relief from stay[7], specifically ruling that "AEA

---

[7] The record reflects that the Motion for Relief was not supported by any admissible evidence. However, the parties, by implication, acknowledge that the Debtor's Schedules admitted both the debt to AEA and the deposit account at AEA on the petition date, demonstrating the mutuality necessary for set off rights.

-4-

is entitled to assert setoff rights once stay is lifted." However, the Court also suggested within its Order that setoff rights might not be necessary if the real property security for the loan was sufficient to satisfy the AEA loans, stating,

> [t]he court has not been provided information as to whether AEA intends to marshal assets, and perhaps proceed against the real property collateral to satisfy the debt. If it can do so, it has no need to access the deposit accounts, which the Debtor may utilize in its reorganization. But no party has raised this issue.

The Order further continued,

> However, this case was filed on May 11, 2010. The court ordered a plan and disclosure statement be filed by September 8, 2010. To date, none has been filed, and no extensions have been granted. The case has been before the court for seven months, with no plan.

This last textural portion of the Order gives rise to the Debtor's assertion within this appeal that the Motion for Relief was granted in error, because no Disclosure Statement and Plan was filed by a deadline which the court remembered in its Order as September 8, 2010. The Debtor correctly points out, both in its Motion to Reconsider and in this appeal, that the court-imposed deadline was December 8, 2010, not September 8, 2010.

On December 14, 2010, the Debtor filed its Motion for Reconsideration of Order Granting AEA Stay Relief Re: Account Setoff ("Motion for Reconsideration"), asserting that the court had based its Order on a misapprehension that the Debtor's Disclosure Statement and Plan had not been timely filed. On January 24, 2011, the Motion for Reconsideration was denied.

A review of the underlying record reflects that the bankruptcy court only granted relief from stay to AEA to allow later setoff activities under state law. The Order did not

-5-

formally approve the setoff of the accounts itself. The Debtor did not file any substantive pleadings with the bankruptcy court addressing AEA's setoff rights, and as such, the final "rights" to setoff accounts were not addressed in the Order and are not addressed in the pending appeal. The only question presented is whether the bankruptcy court erred in granting relief from stay so that those rights could later be determined and exercised.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and § 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in granting AEA relief from the automatic stay to permit setoff of the Debtor's deposit accounts.

## IV. STANDARDS OF REVIEW

The bankruptcy court's decision to grant a motion for relief from the automatic stay is within its sound discretion and is reviewed for an abuse of discretion. In re Delaney-Morin, 304 B.R. 365, 368 (9th Cir. BAP 2003). To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of law or

clearly erroneous factual findings. <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 405 (1990), superseded on other grounds by Fed. Rules Civ. Proc. R. 11. The panel may also find an abuse of discretion if it has a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached. <u>Beatty v. Traub (In re Beatty)</u>, 162 B.R. 853, 855 (9th Cir. BAP 1994).

## V. <u>DISCUSSION</u>

Tuscan Ranch raises three specific arguments on appeal. Its first argument is that the bankruptcy court "was at all times confused as to proper deadlines" with respect to its previous order setting deadlines for the Debtor to file a plan and disclosure statement and that the Order's "Memorandum of Points and Authorities" (sic) "plainly states" that the Order was premised on the failure to file the Disclosure Statement and Plan on September 8, 2010, when the deadline was actually December 8, 2010.

The second argument raised by Tuscan Ranch is that the bankruptcy court erred in granting relief by determining that AEA was entitled to assert setoff rights.

Finally, the third argument raised by Tuscan Ranch, initially in its Response to the Motion and again in its own Motion to Reconsider, is that AEA improperly imposed an administrative freeze on the Debtor's deposit accounts at AEA, and (assumably, but not specifically stated by Tuscan Ranch) that such action was a proper defense to the Motion for Relief.

### 1. Deadlines for Debtor to File Disclosure Statement and Plan

Tuscan Ranch's first argument, that the bankruptcy court premised its order granting relief on a misconception of when a Plan and Disclosure Statement was to be filed is, initially, one way to read the Order Granting Relief. The bankruptcy court's Order states that "[t]he Debtor's legal arguments are misplaced. AEA is entitled to assert setoff rights, once the stay is lifted." If the Order said nothing more, no reasonable ambiguity could be promoted by Tuscan Ranch. However, the Order goes further, stating:

> The Debtor's schedules reflect that AEA is also secured by various parcels of real property. The court has not been provided information as to whether AEA intends to marshal assets, and perhaps proceed against its real property collateral to satisfy the debt. If it can do so, it has no need to access the deposit accounts, which the Debtor may utilize in its reorganization. But, no party has raised this issue.
>
> However, the case was filed on May 11, 2010. The court ordered the plan and disclosure statement be filed by September 8, 2010. To date, none has been filed, and no extensions have been granted. The case has been before the court for seven months, with no plan.

Tuscan Ranch argues that the Motion for Relief would not have been granted if the bankruptcy court had known that the actual deadline was December 8, 2010, instead of September 8, 2010[8]. Tuscan Ranch raised this matter within its Motion for Reconsideration. However, as observed in the bankruptcy court's Order, the Debtor's Response to the

---

[8] Tuscan Ranch is correct that the deadline for the Debtor to file a Plan and Disclosure Statement was December 8, 2010, and not September 8, 2010, as set out in the Order.

-8-

Motion for Relief did not raise the obvious arguments that AEA was premature in desiring to setoff the bank accounts, or that other options were available to AEA, such as marshaling collateral or proceeding against the real property collateral as a first step of collecting its debt. While the bankruptcy court was perhaps mistaken regarding the dates of the previously imposed filing deadlines, the bankruptcy court was correct that the case had been pending for seven months with no plan, and that the Debtor had raised no reasonable arguments as an alternative to granting relief to allow AEA to seek its setoff remedies under Arizona state law. To assign error to the court granting relief from stay because of a mistaken filing date for the plan and disclosure statement, where the court recognized that the case had been pending for a lengthy time, and that it had no other alternative arguments before it, is a thin and unsubstantial reed. This Panel interprets the Order of the bankruptcy court as simply observing that the court had no alternative arguments (aside from AEA's request for setoff of its claim) from the Debtor as to the use of the deposit account funds within a plan or reorganization[9]. The Debtor's argument does not demonstrate the court's abuse of discretion with respect to the erroneous deadline stated within its Order.

---

[9] Although not stated by the court, this line of thought presents itself as an inquiry of whether the Debtor had even attempted to meet its burden of demonstrating the deposit accounts' necessity for the purpose of reorganization as required by § 362(d)(2). However, as discussed below, this consideration was not even raised by AEA or the Debtor.

## 2. Alleged Adjudication of AEA's Right to Setoff

Tuscan Ranch's second argument, that the bankruptcy court erred in determining that AEA had established setoff rights in the first place, runs afoul of the limited role bankruptcy courts must undertake in determining whether relief from stay should be granted to exercise setoff rights.

Once a bankruptcy petition is filed, the stay under § 362 takes effect and all pre-petition creditors are automatically enjoined from taking actions to collect their debts. Section 362(a)(7) specifically prohibits "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7).

When a creditor demonstrates adequate grounds for relief from stay, the bankruptcy court may grant relief from stay pursuant to § 362(d). It is only after relief from stay is granted that a creditor may exercise its offset rights without violation of the stay. In re Pieri, 86 B.R. 208, 210 (9th Cir. BAP 1988); Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33-34 (1st Cir. 1994)(explaining that relief from the stay is "merely a grant of permission from the court allowing the creditor to litigate its substantive claims elsewhere without violating the automatic stay").

The scope of a § 362 motion for relief from stay hearing is summary in nature. "The hearing on a motion for relief from stay is meant to be a summary proceeding, and the statute requires the bankruptcy court's action to be

-10-

quick." Grella 42 F.3d at 31 (citing Matter of Vitreous Steel Prods. Co., 911 F.2d 1223, 1232 (7th Cir. 1990)). These motions do not and should not involve an adjudication of the merits of claims, defenses, or counterclaims, but simply determine whether the moving creditor holds a colorable claim or rights to the property of the estate. See In re Johnson, 756 F.2d 738, 740 (9th Cir.), cert. denied, 474 U.S. 828 (1985)("Hearings on relief from the automatic stay are thus handled in a summary fashion. The validity of the claim or contract underlying the claim is not litigated during the hearing.")(citation omitted); In re Ellis, 60 B.R. 432, 436 (9th Cir. BAP 1985)("In any case, stay litigation is not the proper vehicle for determination of the nature and extent of those rights."); Grella, 42 F.3d at 33 ("We find that a hearing on a motion for relief from stay is merely a summary proceeding of limited effect, and . . . a court hearing a motion for relief from stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate."); see also, 3 Collier on Bankruptcy ¶ 362.08[6], 362-130 and 131 (16th ed. rev. 2011).

In the present case, AEA filed its motion to annul the automatic stay (citing §362 and §362(d) in general) in order to exercise its setoff rights established under its contract(s) with the Debtor and Arizona state law, and this is precisely what was ordered by the bankruptcy court. "AEA is entitled to assert setoff rights once stay is lifted." Where and when AEA was to assert those rights were beyond

-11-

the scope of the Motion for Relief or the Order.

The bankruptcy court was not required to determine the precise rights afforded and duties placed upon AEA to exercise its setoff rights; it was only required to find that AEA held colorable claims of setoff rights in order to be granted relief from the automatic stay. Tuscan Ranch's argument simply overstates the requirements necessary to grant such relief, and the Panel finds that the bankruptcy court did not abuse its discretion in granting the relief sought.

With respect to the statutory basis for the court to grant relief from the automatic stay, AEA had but two sections of § 362 to rely upon, § 362(d)(1) and § 362(d)(2). In reviewing the record, the only grounds set out for relief by AEA were its discussion of its rights to setoff the deposit accounts under § 553. The parties did not discuss any issues regarding "equity" in the deposit accounts or that the deposit accounts were necessary for an effective reorganization. Indeed, as earlier noted, the bankruptcy court briefly touched on the specific lack of discussion by the Debtor for the need of the funds in any reorganization effort. Thus, the Panel concludes that both AEA and the bankruptcy court relied on § 362(d)(1) as the basis for requesting and receiving relief from the automatic stay. The parties have not raised any issues arising under §362(d)(2), including the issue of equity in the deposit accounts or necessity of the deposit accounts for an effective reorganization, and we are not compelled to

address any such matters.

### 3. Section 362(d)(1): AEA Established that Cause Existed for Granting Relief from Stay

This Panel's decision in In re Gould sets out the standards for granting relief to parties seeking to setoff mutual pre-petition obligations under § 362(d)(1). In re Gould (United States v. Gould), 401 B.R. 415, 426, (9th Cir. BAP 2009). AEA, as the party seeking relief, first must establish a prima facie case that cause exists for relief under § 362(d)(1). Once a prima facie case has been established, the burden shifts to the opponent to show that relief from the stay is not warranted. Id. at 426. In In re Gould, this Panel adopted the view explained in In re Ealy, 392 B.R. 408, 414 (Bankr. E.D. Ark. 2008), that "Courts generally recognize that, by establishing a right to setoff, the creditor has established a prima facie showing of 'cause' for relief from the automatic stay under §362(d)(1)." In re Gould at 426.

The record is clear that AEA asserted, and Tuscan Ranch did not rebut, that the Loan Agreements giving rise to Tuscan Ranch's obligations authorized AEA to setoff under §553 "any amounts due and payable under the terms of the Loan against any rights the Debtor had to receive money from AEA, which included any deposit accounts that the Debtor had with AEA." Tuscan Ranch's only defense to the asserted setoff rights was that AEA had improperly imposed an administrative freeze on the accounts in violation of this Panel's holdings in In re Mwangi.

## 4. The Administrative Freeze

Tuscan Ranch raises the fact that AEA imposed an administrative freeze on the Debtor's deposit accounts on the Petition Date and, by implication, reasons that such action should have served as a defense to the Motion for Relief. Tuscan Ranch asserts that this Panel's decision in In re Mwangi, 432 B.R. 812 (9th Cir. BAP 2010) directs AEA to not impose an administrative freeze on the Debtor's deposit accounts. We do not believe that a full scale revisitation or discussion of the In re Mwangi decision is warranted at this time, except to provide a general background and effect of that decision, as well as to remind us of the Supreme Court decision of Citizens Bank of Maryland v. Strumpf, 516 U.S. 16 (1995), which authorizes administrative freezes for specific purposes.

In Strumpf, the Supreme Court held that a bank may place an administrative freeze on a bankruptcy debtor's bank account while the bank pursues relief from the automatic stay. In In re Mwangi, this Panel considered the systemic practice of financial institutions placing administrative freezes in almost all cases in which an individual chapter 7 debtor was a depositor of the institution, but where there was no affirmative assertion of setoff rights. The BAP held in In re Mwangi that a bank cannot place an administrative freeze on an individual chapter 7 debtor's bank account when the bank does not claim a right of setoff, simply because the bank was unsure of what to do with the funds.

Mwangi has very little, if anything, to do with this

-14-

present case or its facts. <u>Mwagni</u> involved an individual chapter 7 debtor who held undisputed statutory exemptions on the funds held by the bank. The bank in that case held no claims of setoff, and asserted no claims, against the deposited funds. On the other hand, the case before us concerns a corporate chapter 11 debtor in possession, with no eligible statutory exemptions, and a credit union with demonstrable setoff rights.

The "administrative freeze" argument, presented to the court as a defense to the Motion, is simply unpersuasive and does not provide a rebuttal to the prima facie case under § 362(d)(1) made by AEA.

### VI. CONCLUSION

The bankruptcy court did not abuse its discretion and its decision is supported by the record. For the reasons set forth above, we AFFIRM.

-15-